UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANDREW TOWER, <br><br>       Plaintiff, <br><br>     v. <br><br> CUSTOMS AND BORDER PROTECTION, <br><br>       Defendant. | Civil Action No. 23-0204 (JDB) |

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant U.S. Customs and Border Protection respectfully moves for summary judgment on Plaintiff's claims under the Freedom of Information Act and Privacy Act. Accompanying this filing is a supporting memorandum, statement of material facts not in genuine dispute, supporting declaration, and a proposed order.

Dated: November 28, 2023
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: */s/ Christina O'Tousa*  _____
    CHRISTINA O'TOUSA
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2437
    christina.otousa@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW TOWER,

       Plaintiff,

    v.

CUSTOMS AND BORDER PROTECTION,

      Defendant.

Civil Action No. 23-0204 (JDB)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS[1]

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ....................................................................................................................... 6

      I.      CPB Properly Asserted a *Glomar* Response Under FOIA Exemption 6............... 6

            A.      CBP Law Enforcement Officers Have a Significant Privacy Interest in the Nondisclosure of Their Names and Identifying Information...................... 6

            B.      CBP's *Glomar* Response Was Necessary to Protect Its Officers' Considerable Privacy Interests in Maintaining Their Anonymity, Which Was Not Outweighed by Any Compelling Public Interest......................... 9

      II.     The Privacy Act Did Not Entitle Plaintiff to the Requested Records, Should Any Exist. ................................................................................................................. 14

CONCLUSION.................................................................................................................... 18

---

[1]      The program that undersigned counsel for Defendant uses to create a Table of Authorities appears to be malfunctioning today. Undersigned counsel will file a Table of Authorities promptly upon regaining the ability to do so.

This case arises from a request for information that Plaintiff Andrew Tower submitted to Defendant U.S. Customs and Border Protection ("CBP" or the "Agency") on November 7, 2022, purportedly under both the Freedom of Information Act ("FOIA") and Privacy Act. Plaintiff Tower's request was targeted so that, by its very terms, the only documents it sought were records of a third party, an alleged CBP law enforcement officer.

*First*, CBP properly asserted a *Glomar* response under Exemption 6 in response to the FOIA request, refusing to confirm or deny the existence of responsive records to protect the identity of CBP law enforcement officers. Acknowledgement of responsive records, were any to exist, would have caused the very harm that is protectable under Exemption 6—confirming the name of a law enforcement officer employed by CBP and therefore revealing the identity of a CBP officer to the public. CBP employees have a significant privacy interest in maintaining their anonymity because they and their family members are vulnerable to harassment and violence from persons who maliciously acquire and disseminate names, duty stations, and other personal data, including transnational criminal gangs, international smugglers, and other extremists. By contrast, there is no public interest in knowing the identity of a lower-level CBP employee, and Tower has not shown that there would be any public interest in the requested records. In fact, most or all of the request appears to seek communications about union activities, as opposed to the government operations of CBP, and Tower did not set forth any public interest in the records. When balancing the privacy interests against the public interest in disclosure, CBP correctly determined that the *Glomar* response under FOIA Exemption 6 was necessary to protect against a clearly unwarranted invasion of personal privacy.

*Second*, CBP properly determined that the Privacy Act would not entitle Tower to the requested records because he did not seek his own records retrievable from a system of records by

use of his own name or personal identifier. The terms of Tower's request made clear that any responsive records would have been retrievable, if at all, from the system of records using the name of the third party, and the Privacy Act does not authorize a requestor to access those records without a privacy waiver from the third party or proof of their death.

CBP hereby submits a motion for summary judgment, on the ground that it complied with its obligations under FOIA and the Privacy Act when responding to Tower's information request. For these reasons, and those set forth in the accompanying declaration, the Court should grant summary judgment in favor of CBP.

## BACKGROUND

On November 7, 2022, CBP received a request for information from Andrew Tower, which he submitted as both a FOIA request and Privacy Act request. *See* Howard Decl. ¶ 5, Ex. A (FOIA / Privacy Act Request). In pertinent part, the request stated:[2]

> This is a Freedom of Information Act Request (FOIA) and also a Privacy Act request.
>
> I define documents, documentation, and communication throughout this request as all email (active and deleted), electronic communications, chat applications, and/or phone transcripts, in full or in part, that could illustrate and provide details related to the specifics of this FOIA request.
>
> I request a copy of documents containing information related to U.S. Customs and Border Protection Officer/NTEU Chapter [###] President [R.H.]'s communication sent and/or received between the dates of 11 February 2022 and present date containing any variations of the following contents, names, or terms: Andrew Tower, Tower, CBPO Tower, Officer Tower, Member not in good standing, member not in good standing, Members not in good standing, members not in good standing, good standing.

---

[2]    The request purports to identify this person by name, position, and union chapter number. Consistent with the basis for CBP's *Glomar* response under Exemption 6, discussed *infra*, CBP is withholding the name and union chapter number from this public filing.

Liberally construing the request,[3] CBP read the request as seeking certain communications of an alleged CBP officer. *See* Howard Decl. ¶ 5. Tower provided a verification of his own identity with the request, but no privacy waiver or proof of death for any third party. *Id.*

On January 25, 2023, Plaintiff filed this civil action against CBP, alleging that CBP violated the FOIA and the Privacy Act. *See* Compl., ECF No. 1.

On March 1, 2023, before responding to the complaint, CBP provided a final response to Plaintiff's request. *See* Howard Decl. ¶ 7, Ex. B (CBP Response Letter). CBP asserted a *Glomar* response, stating that "[a]ny records that may be responsive would be withheld" under FOIA Exemptions 6 and 7(C). *Id.* An agency may issue a *Glomar* response to "refuse to confirm or deny the existence or nonexistence of responsive records if the particular FOIA exemption at issue would itself preclude the acknowledgement of such documents." *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012).[4] The response also stated that the agency would be unable to search for any communications from outside the agency, as the request appeared to seek at least in part communications concerning National Treasury Employees Union ("NTEU")-related matters, which is the union that represents employees at CBP. *See* Howard Decl. ¶ 7, Ex. B.

---

[3]    The third paragraph of Tower's request, which sets forth the operative language for the request, is confusingly worded. There, Tower states that the request seeks documents "containing information related to U.S. Customs and Border Protection Officer/NTEU Chapter [###] President [R.H.]'s communication[s.]"    In other words, Tower seeks not just communications, not just information related to communications, but documents containing information related to communications. This is vague and would not provide sufficient information to allow CBP to formulate a search. This is not legally relevant to the issues in this case, but CBP construed the request as seeking the communications of R.H., a reasonable interpretation that is consistent with a reading of the request as a whole.

[4]    On further consideration, CBP has determined that it will only be relying on Exemption 6 in this motion.

On April 21, 2023, after receiving the final response from CBP, Plaintiff supplemented his complaint against CBP and asserted additional FOIA and Privacy Act claims. Supplemental Compl., ECF No. 10.

On November 28, 2023, CBP sent a clarification letter to Plaintiff explaining that, although CBP did not specifically address the Privacy Act request in the March 1, 2023, final response, CBP considered his request under the Privacy Act as well and determined that the Privacy Act did not entitle him to the records requested, should any exist. *See* Howard Decl. ¶ 9, Ex. C (CBP Clarifying Letter).

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). In FOIA cases, a defendant is typically entitled to summary judgment if it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See, e.g., Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). A defendant may rely on relatively detailed and non-conclusory declarations to meet its burden. *See, e.g., McGehee v. CIA*, 697 F.2d 1095,

1102 (D.C. Cir. 1983); *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014). "The standards used to evaluate FOIA claims on summary judgment also apply to suits under the Privacy Act." *Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

Invoking a FOIA exemption ordinarily involves "identify[ing] the withheld records and explain[ing] the grounds for withholding, thereby confirming that certain records exist." *Schaerr v. Dep't of Just.*, 69 F.4th 924, 928 (D.C. Cir. 2023). But "[i]n certain cases, merely acknowledging the existence of responsive records would itself 'cause harm cognizable under [a] FOIA exception.'" *People for Ethical Treatment of Animals ("PETA") v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). In such cases, "an agency can issue a *Glomar* response, refusing to confirm or deny its possession of responsive documents." *Id.*

"Importantly, an agency need not search its records before invoking *Glomar*." *Schaerr*, 69 F.4th at 928. Nor does an agency submit a *Vaughn* index to justify a *Glomar* response. "In the *Glomar* context, there are 'no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal' to confirm or deny the existence of responsive records." *Schaerr*, 69 F.4th at 928 (quoting *Wolf*, 473 F.3d at 374 n.4); *see PETA*, 745 F.3d at 540. Moreover, the agency's explanatory burden is not demanding. The standard is ultimately no different than in the typical FOIA case: "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374–75 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).

**ARGUMENT**

**I.    CPB Properly Asserted a *Glomar* Response Under FOIA Exemption 6.**

    **A.    CBP Law Enforcement Officers Have a Significant Privacy Interest in the Nondisclosure of Their Names and Identifying Information.**

FOIA Exemption 6 permits agencies to withhold information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted Exemption 6 broadly, making clear that "the phrase 'similar files' [] include[s] all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citing *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)).

"Congress' primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Wash. Post,* 456 U.S. at 599. In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46.

With respect to the privacy interests, "[t]he information need not be intimate" to satisfy the standard. *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990). Exemption 6 recognizes individuals' interest in controlling information concerning his or her person. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-70 (2004) ("the concept of personal privacy . . . is not some limited or 'cramped notion' of that idea," but rather is grounded in "understandings of privacy [that] encompass the individual's control of information concerning his or her person"); *Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989).

While Exemption 6 involves a case-by-case analysis, individuals' names and identifying information often implicate significant privacy interests and are routinely withheld from government records under this exemption. *See, e.g.*, *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (the exemption covers "bits of personal information, such as names and addresses"); *Nat'l Ass'n of Retired Fed. Emps. v. Horner,* 879 F.2d 873, 875 (D.C. Cir. 1989) ("[T]he privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant, as several other circuits have held."). In this vein, "[i]t is well settled that law enforcement personnel and government employees have a substantial interest in anonymity." *Kilmer v. CBP*, Civ. A. No. 17-1566 (CKK), 2023 WL 7695754, at *11 (D.D.C. Nov. 15, 2023).

CBP employees have a particularly significant privacy interest in maintaining their anonymity by virtue of their government employment. For example, upon determining that CBP had presented persuasive evidence that "all of [CBP's] employees are subject to a heightened risk of harassment or attack by virtue of their employment at CBP," the U.S. Office of Personnel Management ("OPM") gave CBP the designation of a "Security Agency" under its official Data Release Policy. *See* Howard Decl. ¶ 13, Ex. D (Jan. 16, 2020, OPM Response Letter to CBP). With this designation, OPM affords additional protections to CBP employee data that is requested, by redacting or otherwise withholding the employee's identity, organizational component, and potentially other similar information under FOIA Exemption 6.  Howard Decl. ¶ 43, Ex. D; *see also id.*, Ex. E (OPM Data Release Policy, August 2020).

CBP follows a similar policy implemented by the Department of Homeland Security ("DHS"), its parent agency. *See* Howard Decl. ¶ 15, Ex. F (DHS Instruction No. 262-11-004, Withholding of Personnel's Personally Identifiable Information from Disclosure, Jan. 15, 2021

("DHS Instruction")). The DHS Instruction recognizes the substantial and legitimate interest DHS employees have in the withholding of their personally identifiable information due to their association with the DHS, which "has multiple sensitive law enforcement and intelligence gathering missions." Howard Decl. ¶ 15, Ex. F. Due to their employment, "DHS personnel and their family members . . . are vulnerable to harassment and/or violence from persons who maliciously acquire and disseminate names, duty stations, and other personal data." *Id.*

CBP employees have an even greater privacy interest in protecting their anonymity than some other DHS employees, considering that CBP is one of the DHS components that actually carries out a law enforcement mission. *Id.* ¶ 16. The DHS Instruction directs withholding of name, rank, and duty information, and identifying information of CBP employees, unless a determination is made that disclosure does not raise security or privacy concerns or if those concerns are outweighed by the public interest in that information. *Id.* ¶ 16, Ex. F.

Courts have recognized the legitimate and substantial privacy interests that CBP employees have in their personally identifiable information. *See*, *e.g.*, *Ctr. for Biological Diversity v. Army Corps of Eng'rs*, 405 F. Supp. 3d 127 (D.D.C 2019) (upholding CBP's withholding of its lower-level employees' names and other identifying information under FOIA Exemption 6); *Sabra v. CBP*, Civ. A. No. 20-0681 (CKK), 2023 WL 1398473, at *8 (D.D.C. Jan. 31, 2023) (appealed on other grounds) (upholding withholdings of CBP employee "names, signatures, photographs or images, contact information, telephone numbers, email addresses, physical addresses, physical descriptions, badge numbers, and identification numbers and other unique identifiers" under Exemption 6); *cf. Kilmer*, Civ. A. No. 17-1566 (CKK), 2023 WL 7695754, at *11 (withholding CBP employees "names, phone numbers, email addresses, and identifying position titles" under Exemption 7(C), applying similar reasoning).

Consistent with the Exemption 6 balancing analysis, however, CBP more often can reveal records with certain identifying information for senior agency officials and agency spokespersons, as there can be a compelling public interest in the disclosure of their information. Under the DHS Instruction, the name and certain basic identifying information of senior agency officials and agency spokespersons are disclosed unless a determination is made that there are security or privacy concerns, and those concerns outweigh the public interest in that information. Howard Decl. ¶ 18, Ex. F.

**B.    CBP's *Glomar* Response Was Necessary to Protect Its Officers' Considerable Privacy Interests in Maintaining Their Anonymity, Which Was Not Outweighed by Any Compelling Public Interest.**

Upon review of Plaintiff Andrew Tower's FOIA request, CBP liberally construed the request as seeking the communications to and from R.H., an alleged CBP officer and NTEU union president. Howard Decl. ¶ 19. CBP further construed the scope of those communications as narrowed by the specified date range (February 11, 2022 and the present) and the nine search keywords and phrases:

1. Andrew Tower
2. Tower
3. CBPO Tower
4. Officer Tower
5. Member not in good standing
6. member not in good standing
7. Members not in good standing
8. members not in good standing
9. good standing

*Id.*

Upon receipt of a proper FOIA request that "reasonably describes" the records sought by the requester, 5 U.S.C. § 552(a)(3)(A), CBP is generally able to redact CBP employee names and

personal data from records are requested. *Id.* ¶ 20. Here, however, redactions would not be adequate to protect the privacy interests of CBP employees. *Id.* ¶ 21.

In his request, Plaintiff seeks the records of a third party. *Id.* ¶ 22. The request identifies the third-party individual by name and claims that he is a CBP officer, meaning that acknowledging the very existence of any responsive records would effectively confirm that a CBP officer by that name is in fact employed by the agency. *Id.* ¶ 23. Acknowledging the existence of records, were they to exist, would ultimately cause the very harm that is cognizable under Exemption 6. *Id.* ¶ 23.

Accordingly, based on the plain language of Plaintiff's FOIA request, which only sought the records of an alleged CBP law enforcement officer, CBP properly refused to confirm or deny the existence of records pursuant to FOIA Exemptions 6. CBP has explained that its policy is to assert a *Glomar* response in such situations, where a requester seeks access to information relating to a third party but fails to provide a privacy waiver from the third party, a proof of death of that third party, or shows that the public interest outweighs the privacy interest of the third party. *Id.* ¶ 24.

There is no dispute in this case that Plaintiff did not submit a privacy waiver from the alleged CBP officer about whom he seeks records or proof of his death. *Id.* ¶ 25. Nor can Plaintiff demonstrate that any purported public interest outweighs the privacy interests of the CBP officer, should he exist.

Upon review of Plaintiff's request, CBP considered "privacy interest in non-disclosure against the public interest in the release of the records." *Lepelletier*, 164 F.3d at 46. The request implicated CBP's significant privacy interest in the protection of their names and identities from disclosure to the public because of the threat to their safety and well-being. Howard Decl. ¶¶ 16–

17, 26–27; *see, e.g.*, *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006) (finding that individuals have a privacy interest in the nondisclosure of their names to avoid physical danger).

CBP employees are subject to a heightened risk of harassment or attack by virtue of their employment at CBP and these employees and their family members are vulnerable to harassment and violence from persons who maliciously acquire and disseminate names, duty stations, and other personal data. Howard Decl. ¶¶ 16–17, 26–27. A FOIA request response revealing a CBP officer's identity would expose the officer to the foreseeable harm of becoming a target of transnational criminal gangs and international smugglers, as well as extremists opposed to federal law enforcement. *Id.* ¶ 27. Moreover, a response indicating that R.H. is not a CBP law enforcement officer would still compromise CBP employees' privacy interests, as it would be revealing in and of itself and any member of the public could simply make a FOIA request about a suspected CBP law enforcement officer to determine whether they are in fact employed by the agency. *Id.* The only way to avoid compromising a CBP law enforcement officer's safety and well-being was to assert a *Glomar* response under Exemption 6 stating that CBP cannot acknowledge the existence or non-existence of records responsive to Plaintiff's FOIA request.

The face of Plaintiff's request also makes clear that the identified individual, should they be an officer with CBP, would not be a senior agency official or spokesperson, a category of CBP employees that are generally treated differently by the agency because of the potentially greater public interest in their role in the operations of CBP. The request claimed that the individual was a CBP officer and union leader, meaning that the individual could not have been a senior official or spokesperson at CBP. *Id.*

CBP also weighed the privacy interest that would be compromised by disclosure against any public interest in the requested information. *Jud. Watch*, 449 F.3d at 153. "The only relevant

public interest in disclosure to be weighed in this balance is the extent to which disclosure would . . . contribut[e] significantly to public understanding of the operations or activities of the government." *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 282 (D.C. Cir. 1997) (internal quotation marks, alternations, and emphasis omitted). Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Reporters Comm.*, 489 U.S. at 775; *see also Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).

There does not appear to be any public interest in disclosure of whether the third party is a CBP officer and, if so, any of his communications that are responsive to the FOIA request. Disclosure of the identity of the CBP officer is not in the public interest because it would not "contribut[e] significantly to public understanding of the operations or activities of the government." *Bartholdi Cable*, 114 F.3d at 282 (internal quotation marks, alternations, and emphasis omitted); *see Horner*, 879 F.2d at 879 (no public interest "unless the public would learn something directly about the workings of the *Government* by knowing the names and addresses"); *Lepelletier*, 164 F.3d at 47 (no public interest where names associated with unclaimed bank accounts do "not shed light on the FDIC's performance of its duties"); *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 87 (D.D.C. 2003) (no disclosure of "names and other identifiers" where "the link between the request and the potential illumination of agency action is too attenuated"). Moreover, Tower has not and cannot establish that the disclosure of the records, were they to exist, would be in the public interest. The request appeared to be focused on the activities of the union, not the operations of the federal government, and Tower did not otherwise identify a relevant public interest in his FOIA request. Howard Decl. ¶ 28.

Having shown no "public interest in disclosure," this Court "need not linger over the balance" between the significant privacy interest of CBP law enforcement officers in maintaining their anonymity to avoid harassment and violence, on the one hand, and any appeal by Plaintiff to the public interest on the other; "something . . . outweighs nothing every time." *Beck*, 997 F.2d at 1494 (quoting *Horner*, 879 F.2d at 879). CBP properly concluded that a *Glomar* response under Exemption 6 was necessary to protect CBP officers' considerable privacy interests and that these were not outweighed by any public interest in disclosing whether responsive records exist.

The analysis does not change due to the fact that Plaintiff's complaint reveals that he is a CBP officer. Neither the identity of the requesting party nor the purpose for which they seek the records is a factor in the Exemption 6 balancing analysis. *Prison Legal News*, 787 F.3d at 1147 ("Neither the identity of the requesting party nor the purpose for which the party intends to use a document is relevant to the public interest[.]"). Rather, it is a bedrock principle of FOIA that any disclosure "would release the contested materials to *the world at large,* not just to [the requestor]." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (emphasis in original); *see also Horner*, 879 F.2d at 875 ("Because a court cannot limit the disclosure of records to particular parties or for particular uses, . . . the court [should not] balance the public interest in disclosure to the whole world against the private interest in avoiding disclosure only to the party making the request, and to ignore the impact on personal privacy of the more general disclosure that will likely ensue.").

Lastly, CBP has satisfied its obligation under FOIA to ensure that "[a]ny reasonably segregable portion of a record" is released. 5 U.S.C. § 552(b). As explained, the entire request is subject to *Glomar*, and the *Glomar* response was justified. Therefore, CBP "need not conduct any

search for responsive documents or perform any analysis to identify segregable portions of such documents." *PETA*, 745 F.3d at 540.

Thus, CBP has demonstrated that it has complied with its obligations under FOIA. There is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law on the FOIA claims.

## II.    The Privacy Act Did Not Entitle Plaintiff to the Requested Records, Should Any Exist.

Plaintiff also brings claims under the Privacy Act, but the Privacy Act does not entitle him to the records requested either.

"Unlike FOIA, the Privacy Act's primary purpose is not disclosure." *Blazy v. Tenet*, 194 F.3d 90, 96 (D.C. Cir. 1999) "The Privacy Act . . . instead uses disclosure as a tool to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies." *Mobley v. CIA*, 806 F.3d 568, 586 (D.C. Cir. 2015) (quoting *Henke v. Dep't of Com.,* 83 F.3d 1453, 1456–57 (D.C. Cir. 1996) (alternation and internal quotation marks omitted)).

Under the Privacy Act, individuals can request access to government records about themselves that are contained within a system of records. 5 U.S.C. § 552a(d)(1). But agencies cannot release such records without proper written authorization of the individual to whom the record pertains, 5 U.S.C. § 552a(b), the procedures for which are set forth by agency regulation. If an individual makes a first-party access request to the DHS for records about themselves, they must provide the agency with proper verification of identity to perfect the request. *See* 6 C.F.R. § 5.21(e). By contrast, if an individual makes a third-party request to the DHS for records about another person, the requestor must follow the procedure for providing both the verification of the subject individual's identity, along with (1) the subject individual's written consent

authorizing disclosure of the records to the third-party requester, or (2) proof of the third party's death. *See* 6 C.F.R. § 5.21(g).

The Privacy Act's right of access provision only applies to records about the individual contained within a "system of records." *Krieger v. Dep't of Just.*, 529 F. Supp. 2d 29, 41 (D.D.C. 2008) ("[N]ot every document held by an agency is a 'record' and not every collection of data constitutes a 'system of records.'"). A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). A "record" is "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4).

A "'system of records exists only if the information contained within the body of material is both *retrievable* by personal identifier and actually *retrieved* by personal identifier.'" *Paige v. DEA*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (quoting *Maydak v. United States,* 630 F.3d 166, 178 (D.C. Cir. 2010) (emphasis in original)). Moreover, "it is not sufficient that an agency has the capability to retrieve information indexed under a person's name, but the agency must in fact retrieve records in this way in order for a system of records to exist." *Henke*, 83 F.3d at 1460 n.12. "[I]n determining whether an agency maintains a system of records keyed to individuals, the court should view the entirety of the situation, including the agency's function, the purpose for which the information was gathered, and the agency's actual retrieval practice and policies." *Id.* at 1461; *id.* at 1456, 1461–62 (the agency did "not maintain a system of records keyed to individuals

listed in the contact person fields of its databases" because the agency's "purpose in requesting the name of a technical contact [was] essentially administrative and [was] not even necessary for the conduct of the [program's] operations," nor was there "any evidence that the names of contact persons [were] used regularly or even frequently to obtain information about those persons").

First, the terms of Plaintiff's request would not even permit the identification of a system of records; it does not clearly describe the category of records requested, but rather just dictates the exact search that he wanted the agency to conduct for him.

But even if Plaintiff had sufficiently identified a system of records, the D.C. Circuit has made clear that the Privacy Act only entitles a requestor to records that are retrievable by his own name or personal identifier, as opposed to someone else's name or personal identifier. *See Sussman*, 494 F.3d at 1123 (explaining the requirement that the record must be "retrievable by [the plaintiff's] name as opposed to someone else's name"). In *Sussman*, the D.C. Circuit explained that the Privacy Act guarantees requesters "access only to their own records, not to all information pertaining to them that happens to be contained in a system of records." *Id.* at 1120. It agreed with OMB Guidelines that stated "[i]f an individual is named in a record about someone else . . . and the agency only retrieves the portion pertaining to him by reference to the other person's name . . . the agency is not required to grant him access." *Id.* The Privacy Act "exclude[s] from mandatory disclosure those materials pertaining to a requesting individual but contained only in *other* individuals' files." *Id.*;[5] *see also Harris v. Holder*, 885 F. Supp. 2d 390, 401 (D.D.C. 2012)

---

[5] Even if the request had indicated that the record was retrieved by Tower's name or personal identifier, Tower would not be entitled to materials that pertain to both him and third-party individuals who have not given their written consent to have their information disclosed. *See Sussman*, 494 F.3d at 1121 n. 9; *Carlborg v. Dep't of Navy*, Civ. A. No. 18-1881 (DLF), 2020 WL 4583270, at *7 (D.D.C. Aug. 10, 2020) ("when materials pertain to both a Privacy Act requester and other individuals from whom the agency has received no written consent permitting disclosure, the Privacy Act's prohibition on disclosing information without written consent 'must take

(finding plaintiff's complaint failed to state how an offending record with respect to an investigation was "about" plaintiff or was retrieved by plaintiff's name or other personal identifier); *Burton v. Wolf*, 803 F. App'x 120, 122 (9th Cir. 2020) (finding that plaintiff was not entitled to records retrievable only with identifying information of his estranged wife).

By the plain language of Tower's request, the records, should they exist, would have to have been retrievable, if at all, by the name of the alleged CBP law enforcement officer identified in the request—not by Tower's own name or identifier. Howard Decl. ¶¶ 35–36. Specifically, he sought that third-party's communications, as opposed to his own records. *Id.* This means that Tower was not entitled to any records under the Privacy Act, should any exist, because Tower did not provide any privacy waiver or proof of death for the third party. *See* 6 C.F.R. § 5.21(g).

Plaintiff may argue that he is entitled to the records because four of the nine keyword searches within the alleged CBP officer's communications are variations of his own name— Andrew Tower, Tower, CBPO Tower, and Officer Tower. But those search terms are just offered to narrow the scope of the third-party's records, and as *Sussman* explains, he is not entitled to records about himself in the file of a third party. The ability to performing a search within files does not mean that the records are both organized by personal identifier and retrieved by personal identifier. *See Krieger*, 529 F. Supp. 2d at 45-46 (finding that plaintiff "offers no facts suggesting that [emails] would have been indexed by name, or that an electronic folder existed that grouped emails related to him by name or other identifier" and noting that "a search function does not [make it] a system of records").

---

precedence'" (citing *Sussman*, 494 F.3d at 1121 n. 9)), *aff'd*, No. 20-5311, 2021 WL 1049467 (D.C. Cir. Mar. 8, 2021).

Thus, CBP complied with its obligations under the Privacy Act when it determined that Plaintiff would not have been entitled to the records requested, should any exist. There is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law on the Privacy Act claims.

## CONCLUSION

For the reasons set forth above, CPB respectfully requests that this Court grant summary judgment in its favor as to all claims against it in this case.

Dated:  November 28, 2023
        Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: */s/ Christina O'Tousa*
    CHRISTINA O'TOUSA
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2437
    christina.otousa@usdoj.gov

*Attorneys for the United States of America*