UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW TOWER,

            Plaintiff,

        v.                                          Civil Action No. 23-0204 (JDB)

CUSTOMS AND BORDER PROTECTION,

            Defendant.

**DEFENDANT'S COMBINED [1] REPLY IN FURTHER SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT AND [2] MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND .......................................................................................................... 4

ARGUMENT ................................................................................................................ 7

      I.     The Agency Properly Asserted a *Glomar* Response Under FOIA Exemption 6.... 7

           A.     Plaintiff Does Not Dispute That Confirming or Denying the Existence of Records Responsive to the FOIA Request Would Constitute a Clearly Unwarranted Invasion of Personal Privacy Under Exemption 6. ............... 7

           B.     The Agency Did Not Issue a "Categorical Denial" in Response to Plaintiff's FOIA Request. ......................................................................... 9

           C.     Plaintiff Has Not Identified Any Specific Information That Is Already in the Public Domain Due to an Official Disclosure by CBP That Establishes the Existence of Records Responsive to His FOIA Request. ................... 14

      II.    The Agency Is Entitled to Summary Judgment on the Privacy Act Claim that Plaintiff Has Abandoned. ...................................................................................... 16

      III.   The Court Lacks Jurisdiction Over Plaintiff's Requests for Declaratory Relief. . 17

CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Afshar v. Dep't of State,*
  702 F.2d 1125 (D.C. Cir. 1983) ............................................................... 14

*Ali v. Rumsfeld,*
  649 F.3d 762 (D.C. Cir. 2011) ................................................................. 18

*Atkins v. Dep't of Just.,*
  946 F.2d 1563 ........................................................................................... 19

*Better Gov't Ass'n v. Dep't of State,*
  780 F.2d 86 (D.C. Cir. 1986) ............................................................. 17, 18

*Blackwell v. FBI,*
  646 F.3d 37 (D.C. Cir. 2011) ................................................................... 13

*Chafin v. Chafin,*
  568 U.S. 165 (2013) .................................................................................. 17

*Department of Defense v. Federal Labor Relations Authority,*
  510 U.S. 487 (1994) ................................................................................... 8

*Dep't of Just. v. Reps. Comm. for Freedom of Press,*
  489 U.S. 749 (1989) ............................................................................ 11, 12

*Fitzgibbon v. CIA,*
  911 F.2d 755 (D.C. Cir. 1990) ................................................................. 16

*Frugone v. CIA,*
  169 F.3d 772 (D.C. Cir. 1999) ................................................................. 15

*Graff v. FBI,*
  822 F. Supp. 2d 23 (D.D.C. 2011) ..................................................... 11, 12

*Huggans v. Exec. Off. for U.S. Att'ys,* Civ. A.,
  No. 19-2587 (EGS), 2021 WL 1092143 ................................................... 12

*Info. Ctr. v. Dep't of Homeland Sec.,*
  218 F. Supp. 3d 27 (D.D.C. 2016) ........................................................... 20

*Jud. Watch, Inc. v. FBI,*
  522 F.3d 364 (D.C. Cir. 2008) ................................................................. 20

*Leopold v. CIA,*
  987 F.3d 163 (D.C. Cir. 2021) ............................................................ 14, 15

*Lewis v. Dep't of Just.*,
    609 F. Supp. 2d 80 (D.D.C. 2009) ................................................................... 13

*Mobley v. CIA*,
    806 F.3d 568 (D.C. Cir. 2015) ........................................................................ 14

*Moore v. CIA*,
    666 F.3d 1330 (D.C. Cir. 2011) ...................................................................... 14

*Nation Magazine, Wash. Bureau v. Customs Serv.*,
    71 F.3d 885 (D.C. Cir. 1995) ..................................................................... 11, 12

*Nat'l Env't Dev. Assoc.'s Clean Air Project v. EPA*,
    752 F.3d 999 (D.C. Cir. 2014) ........................................................................ 20

*North Carolina v. Rice*,
    404 U.S. 244 (1971) ........................................................................................ 18

*Payne Enters., Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) ........................................................................ 17

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ........................................................................ 18

*SafeCard Services, Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ...................................................................... 12

*Salisbury v. United States*,
    690 F.2d 966 (D.C. Cir. 1982) ........................................................................ 15

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) ........................................................................................ 18

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ........................................................................ 1

*Tijerina v. Walters*,
    821 F.2d 789 (D.C. Cir. 1987) ........................................................................ 19

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ........................................................................ 14

Defendant Customs and Border Protection (the "Agency" or "CBP") submits this combined reply in further support of its motion for summary judgment and memorandum in opposition to Plaintiff Andrew Tower's cross-motion for summary judgment.

## INTRODUCTION

Tower, a self-identified CBP officer, has been engaged in a dispute with his former union over dues deducted from his wages. In Tower's combined memorandum in opposition and cross-motion for summary judgment ("Plaintiff's Memorandum"), he explains that when he tried to resign his membership in the National Treasury Employees Union (the "Union") in September 2021, dues continued to be deducted from his wages at the Union's behest for some time thereafter. Tower claims that he discussed his membership status and the continuing deductions with the Union chapter president, who he claims was also a CBP officer, and Tower was apparently not satisfied by the information provided. In November 2022, using the Freedom of Information Act ("FOIA") and the Privacy Act to further his personal dispute with the Union, Tower submitted an information request to CBP seeking the chapter president's electronic communications, specifically those responsive to Tower's own name and his union membership status. This request was targeted so that, by its very terms, the only records it sought were this third-party's communications.

The Agency has properly issued a *Glomar* response under FOIA Exemption 6 in response to the FOIA request, declining to confirm or deny the existence of any responsive records. If communications responsive to Plaintiff's request existed, acknowledging their existence would necessarily reveal the name of a law enforcement officer employed by CBP and therefore reveal his identifying information to the public. That the requestor, Tower, in this lawsuit claims to be a fellow CBP officer is irrelevant. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (acknowledging that a FOIA disclosure "would release the contested materials to *the*

*world at large,* not just to [the requestor]" (emphasis in original)). Plaintiff does not dispute that CBP officers have a significant privacy interest in maintaining their anonymity, nor does he dispute that acknowledging such responsive records, if they were to exist, would cause such an officer harm, by opening him and his family up to possible harassment, violence, and other targeting from gangs, smugglers, and other extremists who maliciously acquire and disseminate names, duty stations, and other personal data. Moreover, Plaintiff only suggests in passing that there is a "public interest" in the Union and CBP complying with terms of a union agreement, but the Supreme Court has already confirmed that the public interest in disclosure for union-related matters like this is "virtually non-existent." As the privacy interests of CBP officers substantially outweigh any negligible FOIA-related public interest, acknowledging whether or not responsive records exist would constitute a "clearly unwarranted invasion of personal privacy" and justifies the Agency's *Gloma*r response under FOIA Exemption 6.

Plaintiff attempts to challenge the Agency's response to the FOIA request on two other grounds, neither of which has merit. *First*, Plaintiff attempts to argue that the Agency's response to his FOIA request in fact acknowledged that responsive records existed and thus that it issued a "categorical denial" in response to the request, as opposed to a *Glomar* response. His interpretation of the Agency's response to his FOIA request is implausible, and Plaintiff simply appears to advocate for this categorical denial theory because he claims—incorrectly and without citing authority—that the Agency would have been required to conduct a search and estimate the volume of any withheld documents when issuing a categorical denial. In reality, the Agency's *Glomar* response did not acknowledge that any responsive records existed, and even if it had asserted a categorical exemption, agencies are not required to conduct a search and estimate the volume of

withheld documents when providing this type of response. Therefore, even under Plaintiff's misguided theory, CBP's response would have been proper.

*Second*, Plaintiff argues that, even if the Agency did assert a *Glomar* response, this type of response was improper because it is in the public domain that R.H.[1] is a CBP officer and Union chapter president. What Plaintiff appears to be alluding to is the "official acknowledgment" exception to *Glomar*, which he misapprehends. Under the showing required by the "official acknowledgment" exception, which is very narrow, a requestor must identify specific information that is already in the public domain due to an official disclosure by the agency asserting the *Glomar* response—here, CBP—that establishes the existence (or not) of records responsive to the FOIA request. Plaintiff did not make this showing. Not only does Plaintiff fail to pinpoint any records responsive to the request in the public domain, but Plaintiff fails to show that any such records were official disclosures by CBP.

With respect to the Privacy Act claim, Plaintiff represents that CBP ultimately fulfilled its obligation under the Privacy Act and that he "withdraws" the Privacy Act claim in Count V of the Supplemental Complaint. *See* Pl.'s Mem., ECF No. 28-1 at 19.

Finally, Plaintiff asks the Court to enter two declaratory judgments, specifically declaring that the Agency violated FOIA and the Privacy Act by not timely issuing a determination in response to the request and that the Agency is not entitled to withhold records under FOIA Exemption 7(C). These are both moot issues, however, as the Agency has since responded to Plaintiff's request and has since withdrawn its reliance on FOIA Exception 7(C) in asserting the

---

[1]     As explained in the Agency's Motion, the FOIA request purports to identify a third party by name, position, and union chapter number. Consistent with the basis for CBP's *Glomar* response under Exemption 6, CBP is withholding the name and union chapter number from this public filing.

*Glomar* response. Because these are no longer live issues in controversy, any such declaration would constitute an impermissible advisory opinion, and the Court lacks jurisdiction to entertain these requests for declaratory relief.

For the foregoing reasons, and those in the Agency's Motion, the Agency has shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on all claims. As such, the Court should grant the Agency's motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

## BACKGROUND

According to Plaintiff Andrew Tower, when he began his employment at CBP in 2019, he became a member of the Union and authorized CBP to begin deducting dues from his wages. Decl. of Andrew Tower ("Tower Decl.") ¶ 2. In September 2021, Tower attempted to resign his union membership and revoke his union dues authorization. Tower Decl. ¶ 3. Reading between the lines, Tower and the Union are now engaged in a dispute over whether the Union was permitted to continued deductions of union dues from his wages for the period of time thereafter, and Tower submitted his FOIA and Privacy Act request to CBP to seek communications from his Union leadership in connection to the dispute.

Tower claims that he asked the union chapter president, CBP Officer R.H., why he stopped receiving emails from the Union, and the chapter president informed him that it was because his membership status had shifted to "member not in good standing." Tower Decl. ¶ 5. According to Tower, the Union considered him a "member not in good standing" from approximately February 11, 2022, to August 28, 2022, during which time CBP deducted dues from his wages at the Union's behest. Tower Decl. ¶ 6.

Tower states that he was unfamiliar with the term "member not in good standing" and that he proceeded to discuss his "member not in good standing" status with the union chapter president.

Tower Decl. ¶ 5, 7. Apparently not satisfied by the information provided, Tower decided to submit a FOIA and Privacy Act request to CBP for the union chapter president's emails that were responsive to keywords that were derivatives of his own name, "Tower," and "member not in good standing." Tower Decl. ¶ 9, Ex. 1. Tower claims that he submitted the request for the following reasons:

> I submitted my FOIA request to CBP because I wanted to learn why I became a "member not in good standing"; whether there is an official process for a person to become a "member not in good standing" including what that process is, who decides a person is a "member not in good standing," how it is decided a person is a "member not in good standing," and how a person becomes a "member not in good standing"; what it means to be a "member not in good standing"; how [the Union] and CBP respond when a person becomes a "member not in good standing"; and why CBP continued deducting dues from my wages after I became a "member not in good standing."

Tower Decl. ¶ 9. To further show this is a dispute over a union issue, Tower submits the union agreement and purports to point to certain requirements regarding the termination of union membership and the associated dues deductions. Decl. of David R. Dorsey ("Dorsey Decl.") ¶ 3, Ex. 2. The Union has email separate from the government network. *See* Decl. of Patrick Howard ("Howard Decl.") ¶ 7, Ex. B.

When Tower did not receive a response within twenty working days of his November 7, 2022, request, he sued CBP under the FOIA and Privacy Act. He filed his complaint on January 25, 2023, and supplemented the complaint on April 21, 2023. *See* Compl., ECF No. 1; Supp. Compl., ECF No. 10.

On March 1, 2023, shortly after the complaint was filed, CBP responded to Plaintiff's FOIA request by issuing a *Glomar* response under FOIA Exemptions 6 and 7(C), refusing to confirm or deny whether records responsive to the request existed because of the foreseeable harm that it would cause:

> This is a final response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) on November 7, 2022. You are seeking documents pertaining to [Union] communications.
>
> CBP has considered the foreseeable harm standard when reviewing the record set and has applied the FOIA exemptions as required by the statute and the Attorney General's guidance[1]. Any records that may be responsive would be withheld in full pursuant to Title 5 U.S.C. § 552 (b)(6) and (b)(7)(C). Additionally, you requested emails from an outside entity and CBP is unable to search for emails outside the government network.

Howard Decl. ¶ 7, Ex. B (CBP Response Letter).  CBP has conveyed that it now relies only upon FOIA Exemption 6 in this litigation, not FOIA Exemption 7(C). Howard Decl. ¶ 7 n.3.

As is the Agency's policy when asserting a *Glomar* response, the Agency's March 1, 2023, response letter did not indicate that it had conducted a search for responsive records in response to the request. Howard Decl. ¶ 7, Ex. B. Rather, it stated that, were any responsive records to exist, they would be withheld in full under the FOIA exemptions. *Id.* CBP has consistently maintained this same position that it did not search for, and thus could not have located, any records responsive to Plaintiff's request. *See* Answer ¶ 8 (Compl.) & ¶¶ 3, 18, 26 (Supp. Compl.), May 18, 2023, ECF No. 13 (admitting that CBP did not conduct a search in response to Plaintiff's request); Howard Decl. ¶ 24, dated Nov. 28, 2023 (CBP policy is to not conduct a search when it asserts a *Glomar* response under Exemption 6).

On November 28, 2023, CBP sent a clarifying letter to Plaintiff explaining that, although CBP did not specifically address the Privacy Act request in the March 1, 2023, final response, CBP has considered his request under the Privacy Act as well and determined that the Privacy Act did not entitle him to the records requested, should any exist. *See* Howard Decl. ¶ 9, Ex. C (CBP Clarifying Letter).

---

[1]    Department of Justice (DOJ), "Freedom of Information Act Guidelines," March 15, 2022, https://www.justice.gov/ag/page/file/1483516/download

**ARGUMENT**

I.    **The Agency Properly Asserted a *Glomar* Response Under FOIA Exemption 6.**

    A.    **Plaintiff Does Not Dispute That Confirming or Denying the Existence of Records Responsive to the FOIA Request Would Constitute a Clearly Unwarranted Invasion of Personal Privacy Under Exemption 6.**

In the Agency's Motion, the Agency explained that it asserted a *Glomar* response pursuant to FOIA Exemption 6. It further explained that CBP law enforcement officers have a significant privacy interest in the nondisclosure of their names and identifying information. As such, acknowledgement of responsive records, were any to exist, would have caused the very harm that is protectable under Exemption 6—confirming the name of a law enforcement officer employed by CBP and therefore revealing the identity of a CBP officer to the public. CBP employees have a significant privacy interest in maintaining their anonymity and acknowledging the existence of responsive records would cause foreseeable harm to CBP officers and their family members, who are vulnerable to harassment and violence from persons who maliciously acquire and disseminate names, duty stations, and other personal data, including transnational criminal gangs, international smugglers, and other extremists. In response, Plaintiff does not disagree or provide any evidence to the contrary, and therefore the significant privacy interests and the foreseeable harm in acknowledging the existence or not of responsive records should be treated as undisputed.

Turning to the "public interest," the Agency explained that there is no public interest in the having the Agency confirm or deny whether any responsive records exist, and Plaintiff effectively concedes this issue as well. There is only one cursory reference to "public interest" in the entire brief. *See* Pl.'s Mem. at 6 ("Officer Tower's Request sought records in the public interest concerning how both CBP and the [Union] comply (or don't) with their negotiated collective bargaining agreement requirement to cease payroll dues deductions that are for the benefit of [the Union] whenever [the Union] decides that a union member is no longer in good standing."). And

Plaintiff does not provide any explanation or legal support as to how it constitutes a public interest. What is more, this statement also departs from the sworn declaration statements that make clear that the focus of his request to the third-party union chapter president was about the union leadership's handling of matters, but in any event, it is clear that this does not qualify as a public interest under Supreme Court precedent.

In *Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 497–98 (1994), the Supreme Court considered the application of Exemption 6 in the context of a union's request for bargaining unit employees' addresses. Upon considering that the only relevant public interest in the FOIA balancing analysis is "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to,'" the Court concluded that the public interest in disclosure was "virtually nonexistent." *Id.* at 497, 500. Although "[d]isclosure of the addresses might allow the unions to communicate more effectively with employees," the Court observed that "such disclosure would reveal little or nothing about the employing agencies or their activities." *Id.* at 497. The privacy interest of bargaining unit employees in nondisclosure of their home addresses substantially outweighed the negligible FOIA-related public interest in disclosure, and the disclosure would constitute a "clearly unwarranted invasion of personal privacy" for purposes of Exemption 6. *Id.* at 502.

In this case, there is even less of an argument for any public interest. Tower's request involves his own personal interest in his dispute with union leadership over dues deductions from his wages. *See generally* Tower Decl. He has identified no way in which confirming or denying the existence of responsive records would "'she[d] light on [CBP]'s performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id.* at 497.

Here, CBP law enforcement officer privacy interests in not acknowledging the existence of responsive records that necessarily would reveal one's name and identifying information to the public substantially outweighs the virtually non-existent public interest in having the Agency confirm or deny whether such responsive records exist. Because acknowledgment would cause a "clearly unwarranted invasion of personal privacy," the *Glomar* response under FOIA Exemption 6 was justified.

**B.    The Agency Did Not Issue a "Categorical Denial" in Response to Plaintiff's FOIA Request.**

Rather than challenge the FOIA Exemption 6 basis for the *Glomar* response, Plaintiff instead proffers two other arguments. Neither is successful.

Plaintiff advances a textual interpretation argument based on the Agency's language in the response to Plaintiff's FOIA request. Specifically, Plaintiff argues that the Agency actually did not issue a *Glomar* response at all, but instead issued a "categorical denial." This is incorrect, but Plaintiff nonetheless does summersaults trying to make this argument because he is under the misimpression that asserting a "categorical denial" would require the Agency to conduct a search and estimate the volume of withheld records.  *See* Pl.'s Mem. at 11, 18. This argument has no support in the law.

As has been previously explained, the Agency responded to the request on March 1, 2023, shortly after the complaint was filed. Specifically, CBP initially issued its *Glomar* response under FOIA Exemptions 6 and 7(C), refusing to confirm or deny whether any records responsive to the request existed because of the foreseeable harm that it would cause:

This is a final response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) on November 7, 2022. You are seeking documents pertaining to [Union] communications.

CBP has considered the foreseeable harm standard when reviewing the record set and has applied the FOIA exemptions as required by the statute and the Attorney General's guidance[1]. Any records that may be responsive would be withheld in full pursuant to Title 5 U.S.C. § 552 (b)(6) and (b)(7)(C). Additionally, you requested emails from an outside entity and CBP is unable to search for emails outside the government network.

Howard Decl. ¶ 7, Ex. B.  CBP now relies only upon FOIA Exemption 6, not FOIA Exemption 7(C), in asserting the *Glomar* response. Howard Decl. ¶ 7 n.3.

In the Memorandum, Plaintiff selectively quotes from this response letter and argues that the phrase "reviewing the record set" indicates that responsive records exist. Read in context, however, clearly this was not an acknowledgement of responsive records. The review of the "record set" refers to the review of records that Plaintiff sought in the FOIA request; CBP was required, when determining whether to issue a *Glomar* response based on one or more exemptions, to consider whether an acknowledgement of the existence of responsive records would cause foreseeable harm under the FOIA exemptions. This reading is further confirmed by the next sentence, which informs Plaintiff that "[a]ny records that may be responsive would be withheld in full"—refusing to confirm or deny whether any responsive records exist in the first place.

Contrary to offering a post hoc rationalization, the Agency has consistently maintained that it did not conduct a search in response to the request, and, without conducting a search, it could not have possibly identified any records responsive to the request. Nothing in the Agency's March 1, 2023, response letter so much as hints that a search was conducted. *See* Howard Decl. ¶ 7, Ex. B. In the answer filed shortly thereafter on May 18, 2023, the Agency again confirmed that it did not

---

[1]    Department of Justice, "Freedom of Information Act Guidelines," Mar. 15, 2022, https://www.justice.gov/ag/page/file/1483516/download

conduct a search in response to the request. *See* Answer ¶ 8 (as to Compl.); *id.* ¶¶ 3, 18, 26 (as to

Supp. Compl.), ECF. No. 13 (repeatedly admitting that CBP did not conduct a search in response

to Plaintiff's request). The Agency's declaration in support of its motion for summary judgment

yet again represents that the Agency did not conduct a search when responding to the request.

Howard Decl. ¶ 24.

    Plaintiff appears to agree with this reading. In the supplemental complaint, Plaintiff

repeatedly confirms his understanding that the Agency did not conduct a search. *E.g.*, Supp.

Compl. ¶ 3 ("[o]n information and belief, CBP did not even conduct a search for responsive

records, let alone a compliant one. And CBP illegally asserted that it is categorically exempt from

producing the records to which Tower is entitled"); *id.* ¶ 15 ("On information and belief, CBP did

not conduct any search in response to Tower's Request."). Without having conducted a search, no

responsive records could have been located and referenced in the CBP response letter.

    Nonetheless, Plaintiff proceeds to argue that the Agency acknowledged responsive records

in the letter, and he appears to do so to argue that the Agency issued a "categorical denial" in

response to the request, as opposed to a *Glomar* response. In pursuing this theory, he baselessly

contends that agencies are required to conduct a search and to estimate the volume of any withheld

records when issuing a categorical denial. *See* Pl.'s Mem. at 11, 18.

    Not so. As background, "categorical decisions may be appropriate and individual

circumstances disregarded when a case fits into a genus in which the balance characteristically tips

in one direction." *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989).

The D.C. Circuit has "made it clear that rules exempting whole groups of records from disclosure

are not only permitted, but should be encouraged as a means of enabling agencies to meet their

formidable FOIA obligations in a timely fashion." *Graff v. FBI*, 822 F. Supp. 2d 23, 31 (D.D.C.

2011) (citing *Nation Magazine, Wash. Bureau v. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995)); *Huggans v. Exec. Off. for U.S. Att'ys*, Civ. A. No. 19-2587 (EGS), 2021 WL 1092143, at *4 (D.D.C. Mar. 22, 2021) (same). Moreover, in *Reporters Committee*, the Supreme Court held "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy[.]" *Id.* at 780.

The D.C. Circuit further clarified the scope of the third-party categorical exemption under FOIA Exemption 7(C) in *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991), and has since refined and expanded the rule over time, *Huggans*, 2021 WL 1092143, at *4. In *SafeCard*, the Court held that "the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C)" are categorically exempt from disclosure unless "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Id.* at 1206. The D.C. Circuit has since explained that, "to the extent any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure." *Nation Magazine*, 71 F.3d 885, 896.

When agencies respond that records pertaining to a third party are categorically exempt, the approach is functionally identical to a *Glomar* response, insofar as the agency is not required to conduct a search and therefore need not confirm or deny the existence of any responsive records. Agencies may categorically refuse to search for records of specified third parties under a categorical exemption when such searches would reveal only protected information. *Graff v. F.B.I.*, 822 F. Supp. 2d 23, 34 (D.D.C. 2011) (concluding that the "practice of refusing to perform a search in response to a third party request for law enforcement records involving a foreign national unless the requester produces a death certificate, privacy waiver, or showing that the

public interest in disclosure outweighs the third party's privacy interest is lawful under FOIA Exemption 7(C)"); *Lewis v. Dep't of Just.*, 609 F. Supp. 2d 80, 82, 84 (D.D.C. 2009) (affirming categorical denial and declination to search for "records pertaining to 'any investigation performed concerning Sarah Blair's employment with Orchid Cellmark'" under Exemption 7(C)).

This practice is illustrated by the D.C. Circuit's decision in *Blackwell v. FBI*, 646 F.3d 37, 39 (D.C. Cir. 2011), a case in which a plaintiff convicted of various offenses had submitted several FOIA requests "for, among other things, all documents related to key witnesses in his trial" from his criminal prosecution. *Id.* When the FBI conducted a search using only the plaintiff's name and identified thousands of responsive documents, the plaintiff argued that the FBI's search was inadequate "because the Bureau did not search its database using the names of [the third-party] individuals he had specifically mentioned in his request." *Id.* at 42. But "the FBI was correct in declining to search for such documents" because "a search for records 'pertaining to' specific individuals would have added only information that [the D.C. Circuit had] concluded is protected by Exemption 7(C)." *Id.* (citation omitted).

Plaintiff is therefore incorrect that the Agency's response to the FOIA request asserted that the records were categorically exempt under the *SafeCard* rule, as the request does not seek law enforcement investigative files pertaining to a private citizen. He also incorrectly asserts that a search must be conducted and that an estimate of the withheld records must be provided with such a response. Unsurprisingly, Plaintiff does not provide a single case to support his contention that this was required. *See* Pl.'s Mem. at 11, 18. In sum, Plaintiff's argument that CBP acknowledged responsive records or issued a "categorical denial" fails.

**C.    Plaintiff Has Not Identified Any Specific Information That Is Already in the Public Domain Due to an Official Disclosure by CBP That Establishes the Existence of Records Responsive to His FOIA Request.**

Plaintiff next attempts to argue that, even if the Agency did assert a *Glomar* response, it was not permitted to do so because information in the public domain shows that R.H. is connected to the Union and CBP. Again, Plaintiff does not even attempt to provide the relevant legal standard, and that is telling, as Plaintiff does not come close to carrying his burden under the proper standard.

If a plaintiff properly demonstrates that "the agency has officially acknowledged the existence of [a] record," the agency cannot use a *Glomar* response. *Moore v. CIA,* 666 F.3d 1330, 1333 (D.C. Cir. 2011). But "[a] strict test applies to claims of official disclosure." *Id.* (internal quotation marks omitted).

To determine whether an item is "officially acknowledged," "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (internal quotation marks omitted). "In the *Glomar* context, then, if the prior disclosure establishes the *existence* (or not) of records responsive to the [information] request, the prior disclosure necessarily matches both the information at issue . . . and the specific request for that information." *Leopold v. CIA*, 987 F.3d 163, 170 (D.C. Cir. 2021). "The plaintiff bears the burden of identifying specific information that is already in the public domain due to official disclosure." *Mobley*, 806 F.3d at 583 (citing *Wolf v. CIA,* 473 F.3d 370, 378 (D.C. Cir. 2007), and *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C. Cir. 1983)).

"[T]o overcome an agency's *Glomar* response based on an official acknowledgement, the requesting plaintiff must pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency." *Moore*, 666 F.3d at 1333; *see also*

*Leopold*, 987 F.3d at 170 ("The initial burden rests with the requester, who must 'point[] to specific information in the public domain that appears to duplicate that being withheld.'" (quoting *ACLU*, 710 F.3d at 427)). Plaintiff has not come close to carrying that burden.

In conducting this assessment, the Court's review is limited to what the Plaintiff has specifically identified, as is the plaintiff's burden. *Leopold*, 987 F.3d at 170. Neither in Plaintiff's request nor thereafter has Plaintiff identified specific information that is already in the public domain due to official disclosure by CBP that establishes the existence of records responsive to the request. *See, e.g.*, Howard Decl. ¶ 5, Ex. A (FOIA Request).

In the Memorandum, Tower appears to misunderstand the standard and incorrectly suggests that the mere fact that publicly available information may exist that associates R.H. with the Union and potentially to CBP suffices to carry his burden. Tower attaches a screenshot of photo posted by the Union's Facebook page, in which an individual named R.H. is tagged. Tower Decl. ¶ 12, Ex. 2. Plaintiff's counsel also attaches some Union bulletins and blog posts, as well as a United States Senate Homeland Security and Governmental Affairs Committee press release, in which he contends R.H. is identified. Dorey Decl. ¶¶ 3–8, Exs. 1-7.

None of the foregoing demonstrate that *CBP* has officially and publicly acknowledged the existence of records responsive to Plaintiff's request, as required. Only CBP—the federal agency asserting the *Glomar* response—can make an effective official acknowledgment that waives the agency's ability to assert a *Glomar* response. *See Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999) ("[W]e do not deem 'official' a disclosure made by someone other than the agency from which the information is being sought."); *Moore*, 666 F.3d at 1333 n.4 ("[T]o the extent Moore suggests that the release of the Report *by the FBI* constitutes an official acknowledgment *by the CIA,* his argument is foreclosed by our precedent." (emphasis in original)); *Salisbury v. United*

*States*, 690 F.2d 966, 971 (D.C. Cir. 1982) ("bare discussions by this court and the Congress of NSA's methods generally cannot be equated with disclosure by the agency"); *Leopold v. CIA*, 987 F.3d 163, 170 (D.C. Cir. 2021) ("it is one thing for a reporter or author to speculate or guess that a thing may be so . . . ; it is quite another thing for one in a position to know of it officially to say that it is so").

Nowhere does Plaintiff identify information in the public domain from an official disclosure by CBP that matches Plaintiff's request—communications to or from alleged CBP officer R.H. that are responsive to the following search terms: "Andrew Tower, Tower, CBPO Tower, Officer Tower, Member not in good standing, member not in good standing, Members not in good standing, members not in good standing, good standing." *See generally* Tower Decl.; Dorey Decl.; *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (only a prior disclosure "as specific" or that "match[es] the information" can effect a waiver); *Afshar*, 702 F.2d at 1133 (broad disclosures on the same topic do not waive the *Glomar* response).

For the foregoing reasons, Plaintiff has not carried his burden of demonstrating that there has been an official acknowledgment by CBP, and therefore CBP appropriately asserted a *Glomar* response under Exemption 6 in response to the FOIA request.

## II. The Agency Is Entitled to Summary Judgment on the Privacy Act Claim that Plaintiff Has Abandoned.

Shortly before moving for summary judgment, the Agency issued a clarifying letter to Plaintiff that explained that it "has also considered [Plaintiff's] Privacy Act request and determined that the Privacy Act would not entitle [him] to the records [he] requested, were any to exist." Howard Decl. ¶ 9, Ex. C. This was because Plaintiff "did not seek [his] own records from a system of records retrievable by [his] own name or another personal identifier assigned to [him]." *Id.* Instead, as the Agency's Motion further explained, the terms of Tower's request made clear that

any responsive records would have been retrievable, if at all, from the system of records using the name of the third party, and the Privacy Act does not authorize a requestor to access those records without a privacy waiver from the third party or proof of the person's death. *See* Def.'s Mot. at 17–21.

In the Memorandum, Plaintiff agreed that CBP had now "fulfilled its Privacy Act obligations" and therefore "withdraws" the Privacy Act claim. *See* Pl.'s Mem., ECF No. 28-1 at 19 ("Tower accordingly withdraws his substantive claim that CBP violated the Privacy Act (Count V)."). Plaintiff neither opposed the Agency's motion for summary judgment on the Privacy Act claim nor moved for summary judgment on the claim himself. Because there is no genuine dispute of material fact on the Privacy Act claim, and the parties agree that the Agency is entitled to judgment as a matter of law, the Court should enter summary judgment for the Agency on the Privacy Act claim.

III.    **The Court Lacks Jurisdiction Over Plaintiff's Requests for Declaratory Relief.**

In Sections I and II of Plaintiff's Memorandum, he seeks the entry of declaratory relief that the Court lacks jurisdiction to entertain. Specifically, Tower seeks declarations from the Court (1) that the Agency violated FOIA and Privacy Act by not responding to his request by the specified deadline (Counts I–II from Complaint) and (2) that FOIA Exemption 7(C) does not permit CBP to withhold records (Count IV from Supplemental Complaint). Because the Agency has since responded to Plaintiff's request and because it no longer relies on FOIA Exemption 7(C) in asserting the *Glomar* response, these are no longer "live" issues that are in dispute and any such declaration by the Court "would constitute an advisory opinion in contravention of Article III of the Constitution." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)*.*

"The doctrine of mootness is a logical corollary of the 'case or controversy' requirement of Article III of the Constitution." *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90 (D.C. Cir.

1986). "There is thus no case or controversy, and a suit becomes moot, 'when the issues presented are no longer 'live'[.]'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). "A federal court is constitutionally forbidden to render advisory opinions or 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Better Gov't*, 780 F.2d at 90-91 (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "Any judgment issued must resolve 'a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.*.

Moreover, where a plaintiff seeks declaratory relief, such a request typically cannot stand independently. Rather, jurisdiction is dependent on a viable request for injunctive relief because the Declaratory Judgment Act does not itself provide a separate cause of action or independent source of federal jurisdiction. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (the Act does not "provide a cause of action" as the "the availability of declaratory relief presupposes the existence of a judicially remediable right" (cleaned up)). The Act is "procedural only" and simply "enlarge[s] the range of remedies available in the federal courts." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (internal quotation marks omitted).

Here, the Court lacks jurisdiction over the requests for declaratory relief because Plaintiff has identified no "live" claim for injunctive relief on which he can depend for jurisdiction. The Agency has already provided its final response to the FOIA and Privacy Act request, and the Agency no longer relies on FOIA Exemption 7(C) in asserting the *Glomar* response. Therefore, Plaintiff has already received everything that he seeks with respect to these requests, and these requests have therefore become moot. Because the Court's jurisdiction under the Constitution extends only to actual, ongoing controversies, it precludes the Court from deciding cases where

the issues presented are no longer live. *Cf. Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) (explaining that FOIA lawsuits generally become moot once an agency has made available requested non-exempt records, whether voluntarily or after court order).

First, the issue of the timeliness of the Agency's response became moot when the Agency provided its response to Plaintiff's request. *See, e.g., Atkins v. Dep't of Just.*, 946 F.2d 1563, at *1 (D.C. Cir. Sept. 18, 1991) (unpublished) ("The question whether DEA complied with [FOIA] time limitations in responding to Aaron Atkins' request is moot because DEA has now responded to this request."); *cf. Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987) ("The [agency's] response may have failed to meet FOIA's mandated standards of promptness, but the agency by now has released all nonexempt materials [plaintiffs] seek. . . . [We] therefore find that these claims no longer present a live controversy."). In the absence of a policy-or-practice claim, which is a limited exception to the rule and not at issue here, the issue of compliance with the deadlines (but not the whole controversy) became moot once the Agency provided its response to Plaintiff's request, and the issuance of a declaratory judgment would constitute an impermissible advisory opinion in contravention of Article III. *See, e.g.*, *Atkins*, 946 F.2d 1563, at *1; *Better Gov't Ass'n*, 780 F.2d at 90-91 (where agency had subsequently granted a fee waiver request after the lawsuit was filed, the requestor's request for "a declaration from this court that the initial refusals to waive FOIA fees were unlawful . . . would be an advisory opinion which federal courts may not provide").

By contrast, none of the three cases cited by Plaintiff remotely supports the existence of jurisdiction or the propriety of the Court issuing a declaration that the Agency violated FOIA and the Privacy Act by not timely responding to his request. Two of the cases are rulings on motions for attorneys' fees, which involve an entirely separate legal test and procedural posture from this

summary judgment briefing and is inapposite to the declaratory judgment issue. *See* Pl.'s Mem., ECF No. 28-1 at 11–12 (quoting *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016), and *Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 370 (D.C. Cir. 2008)). While Plaintiff quotes from a third case for the proposition that an agency cannot ignore or violate its own regulations, that case is far afield, as it involves a challenge to an EPA directive as arbitrary and capricious under the Administrative Procedure Act. *See id.* (citing *Nat'l Env't Dev. Assoc.'s Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014)).

Second, Plaintiff's request for the Court to declare that FOIA Exemption 7(C) does not permit CBP to withhold records became moot when the Agency withdrew its reliance on that exemption. In its Motion and supporting materials, CBP made clear that it is no longer relies on Exemption 7(C) in asserting its *Glomar* response and relies only on Exemption 6. Howard ¶ 7 n.3. Therefore, whether FOIA Exemption 7(C) applies in this case is no longer a live issue in controversy and declaring whether the exemption would have allowed CBP to withhold records would involve inventing a hypothetical factual scenario and thus would constitute an impermissible advisory opinion. *See Better Gov't*, 780 F.2d at 90-91 ("Any judgment issued must resolve 'a real and substantial controversy . . . , as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"). Again, the single case that Plaintiff cites does not support the existence of jurisdiction or the entry of summary judgment for Plaintiff on this request for declaratory relief. This case is also a ruling on a motion for attorneys' fees—not ruling on summary judgment motion or otherwise relevant to this declaratory judgment issue. *See* Pl.'s Mem. at 12 (citing *Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 370 (D.C. Cir. 2008)).

For the foregoing reasons, the Court lacks jurisdiction over Plaintiff's requests for declaratory relief and should deny Plaintiff's requests for summary judgment on these requests.

**CONCLUSION**

For the foregoing reasons, and those stated in the Agency's motion for summary judgment, the Court should grant the Agency's motion for summary judgment and deny Plaintiff's cross motion for summary judgment.

Dated: March 6, 2024
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____*/s/ Christina O'Tousa*_____
    CHRISTINA O'TOUSA, D.C. Bar #241667
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2437
    christina.o'tousa@usdoj.gov

*Attorneys for the United States of America*